**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 27, 2017**

# In the Court of Appeals of Georgia

A17A0235. PATEL et al. v. PATEL.

RICKMAN, Judge.

In this quiet title action, Roshni Patel and Chandani Patel ("the Patels"), acting at all times pro se, appeal the trial court's dismissal of their notice of appeal as well as numerous orders preceding that dismissal, commencing with the trial court's refusal to grant them a default judgment and its sua sponte appointment of a special master. Because we conclude that the error in this case began when the Patels were denied the entry of a default judgment and permeated throughout essentially every stage of these proceedings, we reverse in part, vacate in part, and remand this case for further proceedings consistent with this opinion.

The record shows that in September 2013, the Patels, who are brother and sister, filed a verified petition against their former stepmother,[1] Deepali Patel (the "Defendant"), pursuant to OCGA § 23-3-40 et. seq., seeking to quiet title to four tracts of real property located in Gwinnett County, Georgia ("the Properties"). The petition alleged that the Patels were the lawful owners of the Properties, and included copies of four deeds purporting to convey interest in the Properties to them, either jointly or individually. The petition further alleged that the Patels' title to the Properties was clouded by four separate and allegedly defective deeds purporting to convey interest in the Properties to the Defendant. Of the deeds alleged to have been defective, two were allegedly signed by the Patels' father, acting as the Patels' attorney in fact, although the petition included a sworn affidavit in which he denied having executed the deeds on their behalf. The remaining two deeds were alleged to have been executed by an individual lacking the authority to do so.

After numerous attempts to serve the Defendant were unsuccessful, on December 3, 2013, the trial court issued an order authorizing the Patels to serve her

---

[1] The petition included two additionally named defendants, whom the Patels later dismissed from the action.

2

by publication, and service by publication was thereafter effected.[2] The Defendant never filed an answer or otherwise made an appearance in the case.

In March 2014, the Patels moved for a default judgment against the Defendant.[3] Following a hearing attended by Roshni Patel, the trial court acknowledged that the Patels were seeking a default judgment, but instead of granting their motion, sua sponte appointed a special master pursuant to OCGA § 23-3-63, a statutory scheme not invoked by the Patels' petition (the "Appointment Order").[4] The Appointment Order gave the special master full authority to control case management; entertain all motions and discovery; hold evidentiary hearings; and submit a report, which was to include findings of fact, conclusions of law, and a proposed a final judgment and

---

[2] The published notice of service ran for four consecutive weeks, beginning on January 2, 2014, in accordance with OCGA § 9-11-4 (f) (1) (C).

[3] The Patels' petition included a claim for fraud and sought punitive damages against the Defendant, but in an effort to facilitate an entry of default judgment, they dismissed the fraud claim and moved forward solely on the quiet title action.

[4] The trial court appointed James P. Blum, Jr., of Beloin, Brown & Blum, LLC as special master.

order, to the trial court. It further required the Patels to bear the costs of the special master at an hourly rate of $275.00.[5]

The following week, the special master sent out a request pursuant to OCGA § 23-3-60 et seq. that the Patels file with the clerk "[a]ny abstract of title, title examination, and/or title report upon which [they] rely in the prosecution of this case; and . . . [p]lat of survey for each of the tracts of real property at issue in this case to the extent [the] same are not filed as part of any title examination." Additionally, the special master filed an "initial report and recommendation," in which he stated that the Defendant had not been served; noted that the petition lacked certain information required by OCGA § 23-3-62, namely a plat of survey and a recorded lis pendens for each of the Properties; and recommended that the Patels amend their petition to include the missing documents or face dismissal and serve the amended petition upon the Defendant.

The Patels filed a timely motion to set aside the Appointment Order, strenuously objecting to the appointment of a special master and explicitly stating that

_____

[5] The Appointment Order also provided that in any given month, "[t]he parties appearing in the case" shall each pay a pro rata share of the special master's invoice; the Patels, however, were the only parties appearing in the case because the Defendant was in default and the other defendants had been dismissed.

4

they were unable and unwilling to pay for a special master's services. The Patels reasserted their position that they were entitled to a default judgment and encouraged the trial court to rule on their motion. Alternatively, the Patels requested that the trial court issue a ruling based solely upon the petition and exhibits submitted.

The Patels contemporaneously forwarded their motion directly to the special master, requesting that he not perform any work on the case and informing him that they "[were] not in position to incur any additional cost" and "[would] not be able to pay [his] invoice." The Patels also informed the special master that the Defendant had been served by publication in accordance with the trial court's order authorizing such service, and they objected to the special master's assertion that plats of surveys were needed to resolve the action, which alleged cloud on title caused solely by fraudulent or defective deeds as set forth and included in the verified petition.

In a summary order, the trial court denied the Patels' motion to set aside the Appointment Order. In a separate order, the trial court adopted the special master's initial report and recommendation, thereby commanding the Patels to comply with the special master's direction to amend their petition to submit the additional documentation and to serve the amended petition upon the Defendant.

The Patels filed a timely motion to reconsider, again reiterating their objection to the appointment of a special master and reemphasizing that they "are NOT WILLING to spend"[6] money on a special master. They further pointed to alleged inaccuracies in the special master's initial report and recommendation regarding the lack of service on the Defendant and repeated their belief that a special master was unnecessary to address the allegations against the named Defendant as set forth in the petition. Finally, the Patels stated that "[i]f [the] court deems that [it] cannot make [a] determination without [a special master's] report, [the Patels] ask the court to enter default judgment or dismiss the action," noting that the court's imposition "of [an] additional financial burden on [them]" would "forc[e] [them] to withdraw a legitimate claim."

The trial court issued a notice of hearing on the Patels' motion to reconsider. The Patels in turn filed a motion for summary judgment and contemporaneously therewith, filed a motion to continue the hearing, requesting that the hearing be rescheduled until a date and time on which the trial court would be willing to consider their summary judgment and all other outstanding motions.

---

[6] (Emphasis in original.)

On August 8, 2014, following the originally scheduled hearing date and without ruling on the Patels' motion for a continuance, the trial court issued an order noting that the Patels failed to appear at the hearing and thereafter "grant[ed] their motion to dismiss" and dismissed the case "for want of prosecution" (the "Dismissal Order"). The trial court then ordered that the Patels remit payment to the special master "for all costs incurred for his work"[7] in the case within 60 days of its order and warned that "[f]ailure to comply may result in contempt proceedings" against them.

The Patels filed a motion to set aside and/or modify the Dismissal Order, arguing that the trial court's dismissal of their petition under these circumstances was unjust and constituted an abuse of judicial power. The Patels again asserted that they were entitled to a default judgment and that the trial court erred in appointing a special master sua sponte, explicitly noting that the statutory scheme invoked by their petition authorized the appointment of a special master only "[a]t the option of the complainant."[8] They further objected to the trial court's order requiring them to pay

---

[7] The only record evidence evincing the special master's work is his letter request to the Patels that they obtain and file additional documentation and his initial report and recommendation to the trial court that the Patels amend their petition to include the additional documentation and serve the amended petition upon the Defendant.

[8] See OCGA § 23-3-43.

7

the special master without any evidence or testimony in the record justifying his expenses, and asked at the very least that the order be modified to eliminate the mandate to pay. The Patels also filed a notice of appeal seeking review of the Dismissal Order.

Approximately two months later, the special master filed a "report on nonpayment of fees," informing the trial court that his "fees in the amount of $1,155.00 remain unpaid" despite the mandate in the Dismissal Order that they be paid within 60 days. This is the first mention in the record of the special master's claimed expenses and it was otherwise unsupported by any documentation or other evidence.

The trial court noticed a hearing to address the Patels' motion to set aside and/or modify the Dismissal Order, to "[s]how cause why [the Patels] shouldn't be held in contempt for failure to pay the [s]pecial [m]aster as ordered," and to "[s]how cause why [the Patels'] [n]otice of [a]ppeal shouldn't be dismissed for their failure to comply with the [c]lerk's deficiency memo." The record does not contain a copy of a "deficiency memo" or any other correspondence sent from the court clerk to the

Patels related to their notice of appeal, nor is any such correspondence reflected on the trial court's record index of filings.[9]

The Patels filed a motion to waive and/or continue the hearing, or alternatively, for permission to be represented at the hearing by their father. In the motion, the Patels asserted that they were students living in Texas caring for their mentally impaired mother, and that they did not have the financial means to travel to Georgia or to retain an attorney. They again set forth the procedural history of the case and asserted that they should not be held in contempt because they did not request the special master and his appointment constituted legal error, and maintained that they did not have the funds to pay his fees. The Patels repeated their request that the trial court make a ruling based upon the filings and/or grant them a continuance; alternatively, they requested that their father be permitted to attend and represent their interests. Finally, the Patels denied having received any "deficiency memo" or other correspondence from the clerk of the court with regard to their notice of appeal.

On December 4, 2014, following the date of the scheduled hearing and without ruling on the Patels' motion to waive and/or continue the hearing, the trial court noted

_____

[9] Indeed, although the trial court's notice was issued on November 20, 2014, the first notice to the Patels contained in the record relating to court costs associated with their notice of appeal is dated December 18, 2014.

9

that the Patels failed to attend and entered a summary order denying their motion to set aside and/or modify the Dismissal Order. In addition, the trial court dismissed the Patels' notice of appeal "for failure to comply with the statutory mandates regarding the same." And finally, the trial court stated that it had "received evidence from" the special master, who had attended the hearing, and found the Patels "jointly and severally, in willful contempt in the amount of $1,358.09" (the "Contempt Order").[10] The trial court ordered that the Patels pay that amount to the special master within ten days, and stated that the failure to pay "***shall*** result in an order for [their] immediate incarceration."[12]

The Patels timely filed a motion to set aside the Contempt Order. They again repeated the history of the case, citing statutory and other legal authority in support of their objection to the special master's appointment, and reiterated that they had promptly communicated to both the court and the special master that they could not afford to pay for his services. They reasserted that they did not receive any "deficiency notice" or other correspondence from the clerk regarding their notice of

---

[10] The record contains no evidence supporting the special master's expenses, nor does it explain why the contempt amount differed from the originally claimed unpaid balance of $1,155.00.

[12] (Emphasis in original.)

appeal. Finally, they objected to the reasonableness of the special master's fees, requesting that the court set aside the Contempt Order or, alternatively, "reduce the amount of billing from the [s]pecial [m]aster to [a] reasonable amount that [they] can pay."[13]

Around the same time, the Patels filed a notice of appeal seeking review of the Contempt Order, a motion to stay the order pending appeal, and a motion to transfer venue. The special master filed a "response" to the Patels' various motions, asserting that they each lacked merit.[14]

The trial court summarily denied the Patels' motions and on December 17, 2014, issued an order of incarceration based upon their failure to pay the special master's fees (the "Incarceration Order"). The trial court ordered the Patels "to be immediately incarcerated . . . and held . . . until such time when they purges (sic)

---

[13] The Patels' motion also included an allegation that the special master had "misled" them by advising them that he had no objection to their father representing them at the hearing and indicating that their father would have the opportunity to speak in court.

[14] The special master denied having misled the Patels, asserting that he told them only that he did not object to their father speaking on their behalf at the hearing, but that the trial court may not allow it.

11

themselves of this contempt by paying the arrearages of $1,358.09 by payment of cash . . . including any interest therein accrued."[15]

Due to a procedural deficiency in the Patels' pro se appellate brief, this Court was unable to reach the merits of their appeal of the Contempt Order and in an unpublished opinion, affirmed the trial court's dismissal of their notice of appeal.[16] The case was remitted back to the trial court in February 2016.

Meanwhile, on January 28, 2016, the special master filed a "supplemental report on nonpayment of fees," asserting that his fees in the amount of $1,358.09 remained unpaid, thereby requesting that the trial court reissue its order of incarceration. The special master also requested an additional award of $932.66 for

---

[15] The Patels subsequently amended their notice of appeal, and the trial court thereafter issued a stay of the Incarceration Order only as to Roshni Patel because although the notice of appeal was in both their names, it contained only his signature. The Patels filed a motion to modify the order staying the Incarceration Order to include both of them, but that motion was denied.

[16] Because this Court expressly declined to rule on the underlying merits, the law of the case rule does not foreclose us from addressing them now. See OCGA § 9-11-60 (h) ("[A]ny *ruling* by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be.") (emphasis supplied); *Parks v. State Farm Gen. Ins. Co.*, 238 Ga. App. 814, 815 (1) (520 SE2d 494) (1999) ("[T]he [law of the case] rule applies only to actual *decisions*, not to issues raised by the parties but never ruled upon.") (citation and punctuation omitted); see also *Hicks v. McGee*, 289 Ga. 573, 578-579 (2) (713 SE2d 841) (2011).

"time which [he] spent in dealing with the [Patels'] appeal and in drafting these pleadings," and requested that a total amount of $2,290.75 be reduced to a judgment and that a writ of fieri facias issue on the same. The special master requested a hearing "to consider [his] requests."

The trial court thereafter issued an order that its Incarceration Order "[was] in full force and effect" and noticed a hearing as requested by the special master.[17] The special master subsequently sent email correspondence to the Patels, informing them that he "will also be asking for $275/hour for all of the time [he] will incur" at the requested hearing, which he "assume[d] . . . will at least be 2 hours," and that if they "wish to avoid the additional hourly time," he would accept $2,290.75 by certified funds prior to the day of the hearing.

The Patels filed a response to the special master's supplemental report on nonpayment of fees, noting that the trial court lacked jurisdiction to order them to continue paying the special master after dismissing the action and strenuously objecting to the demand for additional funds without any evidence justifying the

---

[17] The Patels filed a motion to add their father as an additional plaintiff to the lawsuit, asserting that he had communicated with the special master on their behalf and would be the one ultimately responsible paying his fees, but that motion was denied.

13

additional expenses. They further opposed the trial court holding a hearing on the matter, noting that the special master would charge them to appear at the hearing and that due to the Incarceration Order, they were afraid to enter the courtroom unless and until they had the money to pay. They also made a motion for sanctions against the special master "for filing [a] frivolous and fraudulent" request for additional money.

Ultimately, the Patels deposited $1358.09 into the registry of the court and filed an emergency motion to cancel the hearing and vacate the Incarceration Order. On February 16, 2016, the trial court issued an order setting aside the Incarceration Order, noting that the Patels "purged themselves of contempt" by remitting payment.

Nevertheless, the trial court conducted the scheduled hearing, noted that the special master appeared and the Patels did not, and issued an order that "the proper foundation for an award of additional fees and costs to the [s]pecial [m]aster has been laid" and awarded him "an additional $1,482.66 against the [Patels] for his fees and costs associated with efforts . . . since the original order was entered." Thus, while recognizing that the Patels had deposited the original amount of $1,358.09 into the court's registry, the trial court ordered that they "***shall*** remit"[18] the additional payment

---

[18] (Emphasis in original.)

to the special master within 60 days of the order and "[f]ailure to comply may result in contempt proceedings against" them (the "Order Awarding Additional Fees").[19]

The Patels filed a timely motion to set aside the Order Awarding Additional Fees and a motion to recuse, and filed a notice of appeal.[20] The trial court scheduled a hearing on the motion to set aside and in a separate order, set a hearing on a different day for the Patels to "show cause why [their] [n]otice of [a]ppeal shouldn't be dismissed for failure to pay appellate costs." Ultimately, the hearings were rescheduled to occur on the same day and Roshni Patel appeared. Following the hearing, the trial court denied the Patels' motion to set aside the Order Awarding Additional Fees and the motion to recuse. It further dismissed their notice of appeal after concluding that "there has been an unreasonable delay in the filing of the

---

[19] The only record evidence purporting to support the special master's claimed expenses is an invoice he sent to the Patels containing nothing more than a non-itemized list of his charges and the Patels' alleged overdue balance.

[20] In the interim, the Patels filed a motion to transfer venue, a motion for sanctions against the special master, a motion to reduce the original judgment, a motion to add party, and a motion to enter an order on the pleadings and/or a motion to continue. The trial court denied each motion in summary orders. The Patels moved to set aside each denial order in their motion to set aside the Order Awarding Additional Fees.

transcript and it has been shown that the delay was inexcusable and was caused by the [Patels]."

The Patels filed a motion to reinstate the notice of appeal, asserting that they had not requested that any transcript be included in their appeal and were not aware that any hearing or proceeding had been transcribed. The trial court denied their motion in a summary order. This appeal follows.

1. The Patels assert that the trial court erred in dismissing its notice of appeal of the Order Awarding Additional Fees. We agree.

The trial court's authority to dismiss a notice of appeal is governed by OCGA § 5-6-48. Subsection (c) provides that, in appeals that involve the filing of a transcript, "the trial court may, after notice and opportunity for hearing, order that the appeal be dismissed where there has been an unreasonable delay in the filing of the transcript and it is shown that the delay was inexcusable and was caused by such party." In cases that involve only the transmission of a record in the absence of a transcript, "the trial court may order the appeal dismissed where there has been an unreasonable delay in the transmission of the record to the appellate court, and it is seen that the delay was inexcusable and was caused by the failure of a party to pay costs in the trial court or file an affidavit of indigence." OCGA § 5-6-48 (c). The trial

16

court's discretion to dismiss a notice of appeal "is a legal discretion which is subject to review in the appellate courts." (Citation and punctuation omitted.) *Ray v. Williams*, 144 Ga. App. 155 (1) (240 SE2d 577) (1977).

The trial court justified its dismissal of the Patels' latest notice of appeal on the ground of an "unreasonable delay in the filing of the transcript," which the court concluded "was inexcusable and was caused by the [Patels]." The record is completely devoid, however, of evidence that any hearing or proceeding in this case was ever transcribed. Indeed, the Patels have asserted that none were. More importantly, however, 15 days after filing the notice of appeal at issue, the Patels amended the notice in order to specify that "**[n]o transcripts**"[21] were to be transmitted with the record. Thus, there was no basis in law or fact for the trial court to dismiss the notice of appeal due to an alleged delay in filing a transcript and the court clearly abused its discretion in doing so. See generally *Hammontree v. Hammontree*, 186 Ga. App. 819, 820 (368 SE2d 576) (1988) (reversing the trial court's dismissal of appellant's notice of appeal); *White v. Olderman Realty & Development Co.*, 163 Ga. App. 57 (293 SE2d 726) (1982) (same); *Ray*, 144 Ga. App.

---

[21] (Emphasis in original.)

17

at 155-156 (1). Accordingly, the trial court's judgment dismissing the Patels' notice of appeal of the Order Awarding Additional Fees is hereby reversed.

2. Having reversed the trial court's dismissal of the Patels' notice of appeal, we will now address the merits of the underlying appeal. See generally OCGA § 5-6-34 (d) ("Where an appeal is taken . . . all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court . . . ."); *McKinnon v. McKinnon*, 158 Ga. App. 776, 777 (2) (282 SE2d 220) (1981).

(a) *The Appointment Order*. Proper resolution of this appeal requires us to first return to the trial court's refusal to grant the Patels a default judgment and instead appoint, sua sponte, a special master. Both were erroneous.

(i) Under Georgia law, a defendant may be served with process by publication upon order of the court in accordance with OCGA § 9-11-4 (f). A defendant has 60 days from the order of publication in which to file an answer. OCGA § 9-11-4 (f) (1) (C). "If in any case an answer has not been filed within the time required by [statute], the case shall automatically become in default unless the time for filing the answer has been extended as provided by law." OCGA § 9-11-55 (a). With exceptions not applicable here, if the default has not been opened within 15 days, "the plaintiff at any

18

time thereafter *shall* be entitled to verdict and judgment by default, in open court or in chambers, as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a jury . . . ." (Emphasis supplied.) Id.

Here, the Patels obtained a court order on December 3, 2013 to serve the Defendant by publication, and service by publication was thereafter effected. As set forth in the published notice, the Defendant had 60 days from the date of the order in which to file an answer, yet failed to do so. The case thus automatically went into default on February 3, 2014. See OCGA §§ 9-11-4 (f) (1) (C); 9-11-55 (a). After the Defendant made no effort to open the default within 15 days, the Patels were entitled to default judgment as a matter of law. See OCGA § 9-11-55 (a); *Cavender v. Taylor*, 285 Ga. 724, 724-725 (2) (681 SE2d 139) (2009) (affirming the trial court's entry of default judgment in a quiet title action); *SRM Realty Services Group, LLC v. Capital Flooring Enterprises, Inc*., 274 Ga. App. 595, 604 (2) (617 SE2d 581) (2005) ("The plain language of [OCGA § 9-11-55 (a)] 'entitles' a plaintiff default judgment where . . . a defendant has failed to serve an answer timely, 15 days have elapsed from the time an answer was due without an answer served and costs paid, the defaulting defendant has made no attempt to open the default, and the action does not fall within

19

any of the exceptions set forth in that Code section."); see also *H. N. Real Estate Group, LLC v. Dixon*, 298 Ga. App. 124, 125-126 (679 SE2d 130) (2009). Accordingly, the trial court erred in denying their motion for default judgment.

(ii) Compounding that error, the trial court appointed a special master, sua sponte, over the Patels' objection. This was also in direct contravention of Georgia law.

"To quiet title to real property, one may seek relief under the procedures and standards for conventional quia timet, see OCGA § 23-3-40[22] et seq., or under those for quia timet against all the world, see OCGA § 23-3-60[23] et seq." *Vatacs Group, Inc. v. U. S. Bank, N. A.*, 292 Ga. 483 (1) (738 SE2d 83) (2013). The contemplated

---

[22] A conventional quiet title action "is sustained in equity for the purpose of causing to be delivered and canceled any instrument which has answered the object of its creation or any forged or other iniquitous deed or other writing which, though not enforced at the time, either casts a cloud over the complainant's title or otherwise subjects him to future liability or present annoyance, and the cancellation of which is necessary to his perfect protection." OCGA § 23-3-40.

[23] A quiet title action against all the world "is . . . a procedure for removing any cloud upon the title to land, including the equity of redemption by owners of land sold at tax sales, and for readily and conclusively establishing that certain named persons are the owners of all the interests in land defined by a decree entered in such proceeding, so that there shall be no occasion for land in this state to be unmarketable because of any uncertainty as to the owner of every interest therein." OCGA § 23-3-60.

20

procedures of the two proceedings are entirely distinct from each other. See *Vatacs Group, Inc.,* 292 Ga. at 483 (1); compare OCGA § 23-3-40 et seq. with OCGA § 23-3-60 et seq. In their petition, the Patels filed a conventional quiet title action, expressly invoking OCGA § 23-3-40 et seq., asserting cloud on title resulting solely from the allegedly defective and/or fraudulent deeds held by the Defendant.

By the plain language of the statutory authority, when a quiet title action is instituted pursuant to OCGA § 23-3-40 et seq., the appointment of a special master is made "[a]t the option of the complainant." OCGA § 23-3-43. Here, the trial court's sua sponte invocation of OCGA § 23-3-60 et seq. and its appointment of a special master over the Patels' objection—particularly in light of their immediate and repeated declarations that they were unable to pay for the services—was patently unauthorized. See OCGA § 23-3-43; *Boyd v. JohnGalt Holdings, LLC*, 294 Ga. 640, 643 (2) (755 SE2d 675) (2014) (recognizing that the power to dictate the appointment of a special master in an action under OCGA § 23-3-40 et seq. rests exclusively with the plaintiff). Cf. *Stephens v. Department of Transp.*, 170 Ga. App. 784, 787-788 (1) (318 SE2d 167) (1984) (holding, under a separate statutory scheme, that the trial court erred in sua sponte appointing a special master when the statute contemplated

21

that appointment was to occur upon the petition of a party). Therefore, the trial court's Appointment Order is hereby reversed.

(b) *The Contempt Order, the Incarceration Order, and The Order Awarding Additional Fees*. Although clear legal error permeates each of these orders for separate and distinct reasons, we need go no further than holding that each is void because each was issued after the trial court dismissed the Patels' petition.

> Under Georgia law, the unqualified dismissal of a case terminates the action, divests the trial court of jurisdiction to take further action in the case, and renders all orders entered after the dismissal a mere nullity. Furthermore, upon dismissal of the case, all prior orders that were entered in the case are superseded and can no longer be enforced against the parties. Thus, the dismissal of a case divests the court of jurisdiction to consider a subsequent contempt motion and precludes the court from finding a party in contempt of an order previously entered in that case.

(Citations and punctuation omitted.) *Lewis v. City of Savannah*, 336 Ga. App. 126, 129 (1) (784 SE2d 1) (2016); *Montgomery v. Morris*, 322 Ga. App. 558, 559-561 (1) (745 SE2d 778) (2013) (trial court lacked jurisdiction to hold party in contempt after dismissing the case despite its order purporting to retain jurisdiction "to re-open the action if necessary"); see also *Gallagher v. Fiderion Group, LLC*, 300 Ga. App. 434, 436-437 (1) (685 SE2d 387) (2009).

22

Upon issuing the Dismissal Order, the propriety of which we need not address, on August 8, 2014, the trial court no longer retained jurisdiction over the action. See *Lewis*, 336 Ga. App. at 129 (1); *Montgomery*, 322 Ga. App. at 561 (1); *Gallagher*, 300 Ga. App. at 436 (1). It follows that the Contempt Order, the Incarceration Order, and the Order Awarding Additional Fees were mere nullities without force or effect. See *Lewis*, 336 Ga. App. at 129 (1); *Montgomery*, 322 Ga. App. at 561 (1); *Gallagher*, 300 Ga. App. at 436 (1). We therefore vacate those orders as void.

3. *The Motion to Recuse.* The Patels assert as error the trial judge's refusal to recuse herself from this case. We cannot say that the judge's denial of the Patels' motion was erroneous because the motion itself was legally deficient. See Uniform Superior Court Rule 25.1 ("All motions to recuse or disqualify a judge presiding in a particular case or proceeding shall be timely filed in writing and all evidence thereon shall be presented by accompanying affidavit(s) which shall fully assert the facts upon which the motion is founded."). We note, however, that the legal deficiency of the Patels' motion did not in any way diminish the judge's obligations under the Code of Judicial Conduct. See Rule 2.11 (A) ("Judges shall disqualify themselves in any proceeding in which their *impartiality* might reasonably be questioned . . .") (emphasis in original); see also Rule 2.3 (A), (B) ("Judges shall

23

perform judicial duties without bias or prejudice. . . . [and] shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice . . ."); Rule 2.4 (A) ("Judges shall be faithful to the *law* and maintain professional competence in it.") (emphasis in original); Rule 2.13 (A) (1), (2) ("In making administrative appointments, a judge . . . shall exercise the power of appointment *impartially* and on the basis of merit; and . . . shall avoid nepotism, favoritism, and unnecessary appointments.") (emphasis in original).

4. In summary, the Patels were entitled to an entry of default judgment as a matter of law when they filed their motion in March 2014, and the trial court's decision to instead issue an order appointing a special master is hereby reversed. Moreover, all orders issued subsequent to the dismissal of the petition demanding that the Patels pay for a special master whose appointment was neither lawful nor necessary are hereby vacated.

*Judgment reversed in part, vacated in part, and case remanded. Ellington, P. J., and Andrews, J., concur.*