**THIRD DIVISION**
**DILLARD, P. J.,**
**MERCIER and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

April 30, 2026

# In the Court of Appeals of Georgia

A26A0521. CLARENCE GLENN et al v. A-ONE CHEMICALS AND EQUIPMENT, INC.

A26A0522. ZEP, INC. v. YOLANDA DEVOST, AS DULY APPOINTED REPRESENTATIVE OF THE ESTATE OF CLARENCE GLENN, DECEASED et al.

A26A0523. MICHAEL BURRELL et al v. A-ONE CHEMICALS AND EQUIPEMENT, INC.

A26A0524. ZEP, INC. et al v. MICHAEL BURRELL et al.

A26A0677. A-ONE CHEMICALS AND EQUIPMENT, INC. v. MIKE BURRELL et al.

DILLARD, Presiding Judge.

These five consolidated appeals arise from the trial court's decision to appoint a special master to preside over the underlying mass-tort litigation. On one side are

plaintiffs–appellants in Case Numbers A26A0521 and A26A0523,[1] who argue the court erred by (1) appointing a special master under Uniform Superior Court Rule 46, (2) rejecting affidavits of indigency without a hearing, (3) holding them in contempt for failing to pay the special master's bill, and (4) ordering them to pay their pro-rata share of outstanding special-master fees. And on the other side are defendants–cross appellants in Case Numbers A260522, A26A0524, and A26A0677,[2] who argue the court erred in imposing joint and several liability for the special-master costs—which are litigation fees borne individually by each party. For the following reasons, as to Case Numbers A26A0521 and A26A0523, we affirm in part and vacate in part, and we

---

[1] The plaintiffs–appellants in Case Number A26A0521 are Clarence Glenn, Demetrius Phillips, Nicole Milan, and Chris Hudson. The plaintiffs–appellants in Case Number A26A0523 are Michael Burrell, Christi Burrell, Brian Carter, Grady Carter, Zarraius Dupree, Willie Gates, James Grove, Debra Grove, Joshua Mitchell, Lamont Michael, Scot Newton, and Melinda Newton. For the sake of clarity, the plaintiffs–appellants in these two cases will be referred to collectively as "plaintiffs" throughout the opinion.

[2] The defendant–cross appellant in Case Numbers A26A0522 and A26A0524 is Zep, Inc. The defendant–cross appellant in Case Number A26A0677 is A-One Chemicals and Equipment, Inc. For the sake of clarity, the defendants–cross appellants will be referred to individually as Zep and A-One or collectively as "defendants."

remand for further proceedings; and as to Case Numbers A26A0522, A26A0524, and A26A0677, we vacate.[3]

The record shows that plaintiffs—who are represented by the same attorney—filed two lawsuits against more than 20 defendants (including both corporate entities and individuals) in December 2020 and February 2022 in the State Court of Fulton County. Plaintiffs were employees of certain defendants and had job duties that allegedly exposed them to toxic chemicals produced and manufactured by other defendants (including Zep and A-One[4]). They were later diagnosed with a variety of medical conditions allegedly caused by this exposure. As a result, plaintiffs brought claims for product liability, negligence, failure to warn, willful concealment, intentional infliction of emotional distress, noncompliance with 29 CFR 1910.1020, fraud, and RICO violations. They requested recovery "in excess of $30,000,000 each," as well as punitive damages and attorney fees.

---

[3] Oral argument was held as to Case Number A26A0677 on February 3, 2026, and is archived on the Court of Appeals of the State of Georgia's website. See Court of Appeals of the State of Georgia, Oral Argument, Case No. A26A0677 (Feb. 3, 2026), available at https://vimeo.com/1161864670.

[4] Importantly, A-One is *not* a named defendant in the suit underlying Case Number A26A0521, involving plaintiffs Glenn, Phillips, Milan, and Hudson.

On June 29, 2023, the trial court held a status hearing on the two cases, and several case-management options were discussed: (1) waiting for the court to have time to deal with both cases, (2) appointing a senior judge, and (3) appointing a special master. The trial-court judge stated that neither she nor a senior judge had the time or resources to manage cases involving so many parties. So, the court appointed a special master despite plaintiffs' concern that they could not pay special-master fees and would be penalized with contempt of court. In response, the court noted: "[A]s much as I may sympathize with parties who say, 'I do not have the resources,' the law does not allow me to make that a factor in moving this case in an efficient manner in the way it should be moved." And after hearing the court's decision, defendants voiced concern over how the special master would be paid but said they might be able to reach a consensus on that issue with a little more time. Later, in a letter to the court, plaintiffs *agreed* with the court's proposed special master and proposed a fee-split arrangement for its consideration.

The parties briefly returned to the trial court on August 1, 2023, and there were questions raised about whether the two cases should be consolidated for special-master purposes. The parties said they would discuss the matter and get back to the

court.[5] And on August 9, 2023, in a single order, the trial court appointed a special master to address "all pre-trial matters" in the cases. As for the cost of this appointment, the court ordered that it "be allocated as agreed upon by the Parties as follows: As between the Parties, the Special Master's fees and expenses shall be allocated *Pro Rata* based upon the number of parties in the respective cases, fifty-five (55) parties (39 Defendants and 16 Plaintiffs)."[6] The order continued by providing that

> [t]he Parties in the respective cases shall be jointly and severally liable to the Special Master for the Special Master's fees and expenses associated with that case. The Special Master's invoices may therefore be submitted to any party and shall be paid in full by the receiving party within 30 days of submission. As to the division of fees amongst the Plaintiffs and Defendants, the Parties are free to develop arrangements that work for the Parties as long as those arrangements do not affect the joint and several liability to the Special Master.

---

[5] The plaintiffs noted in a notice of appeal that another hearing followed but that a transcript does not exist for this third hearing on the matter.

[6] The order also provided that the pro-rata share would change if the number of parties changed. The court then amended the order in October 2024 to provide for the accrual of interest on any unpaid bills.

Then, in February 2025, a dispute arose regarding the special master's invoices, and A-One filed a motion for contempt as to *all* plaintiffs and a motion to reconsider the special master's appointment as to the imposition of joint and several liability for the fees. A-One claimed that, since the appointment, invoices were sent each month to a single party, which was then required to pay the invoice in its entirety and "chase down payment from the other 54 parties." In December 2024, A-One received an invoice for $25,680; and despite several efforts to collect, plaintiffs did not pay A-One their pro-rata share of this invoice—which was equal to $7,470.55 (or $466.91 each). A-One then learned plaintiffs had not paid several other defendants who received earlier invoices. As a result, A-One asked the court to hold plaintiffs in contempt. A-One also requested that the court amend the appointment order to remove the "joint and several liability" language.[7] Zep and other defendants joined A-One's motion.

---

[7] The trial court's order appointing a special master was an interlocutory order (not a final order), and so the court could still reconsider and alter its judgment. See *Rudd v. Paden*, 279 Ga. App. 141, 144–45(3) (630 SE2d 648) (2006) (explaining that motion for reconsideration of the denial of motion for summary judgment was timely because the order was interlocutory, not final). See also OCGA § 15-1-3(6) (providing that every court has the power to "amend and control its processes and orders, so as to make them conformable to law and justice"). Also, the order appointing a special master "may be amended *at any time* after notice to the parties and an opportunity to be heard." Unif. Super. Ct. R. 46(A)(4) (emphasis added).

Plaintiffs opposed Zep and A-One's motion, reminding the trial court that they previously "objected" to paying a pro-rata share of the special master's fees because they could not afford to do so. More precisely, plaintiffs argued the court should not hold them in contempt because they were not *willfully* failing to comply with the order—they simply could not afford to pay their share. Plaintiffs also claimed their contingency-fee agreement with counsel did not require him to pay the special-master fees on their behalf. But plaintiffs took no position on A-One's request for the court to remove the joint-and-several-liability requirement from its order.

On April 10, 2025, the trial court stayed proceedings until payment was made to the special master. The court then held a hearing on the motion for contempt.[8] A little over a week *after* this hearing, plaintiffs filed affidavits of indigency, claiming they could not pay the special master. The court then issued an order in August 2025, finding that "Plaintiffs have not shown that they have exhausted all resources and assets available to them and consequently are still unable to secure the funds necessary to enable compliance with the order to pay the Special Master fees." The court also concluded that the record lacked evidence to "show that Plaintiffs have, in good faith,

---

[8] The trial court conducted a hearing on April 22, 2025, but there is no transcript for this hearing.

7

exhausted all the resources at their command and have made diligent and bona fide efforts to comply with the order of the court, and that they cannot borrow sufficient funds to comply with the obligation to pay the Special Master fees." As a result, plaintiffs were held in contempt and ordered to pay their pro-rata share of the fees within ten days of the court's order. The court made no ruling on the motion to reconsider its joint-and-several-liability requirement. These appeals follow, in which the parties challenge not only the August 2025 order but also the order appointing the special master.[9]

1. *Plaintiffs' Appeals - Case Numbers A26A0521 & A26A0523.*

Plaintiffs contend the trial court erred by (a) appointing a special master under Uniform Superior Court Rule 46, (b) rejecting their affidavits of indigency without a hearing, (c) holding them in contempt for failing to pay their pro-rata share of the

---

[9] Because plaintiffs filed a direct appeal to the trial court's order holding them in contempt, see OCGA § 5-6-34(a)(2) (permitting direct appeals from contempt orders), the parties are also permitted to challenge the earlier order appointing the special master, see OCGA § 5-6-34 ("Where an appeal is taken under any provision of subsection (a), (b), or (c) of this Code section, all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to the appealability of the judgment, ruling, or order standing alone and without regard to whether the judgment, ruling, or order appealed from was final or was appealable by some other express provision of law contained in this Code section, or elsewhere.").

special master's bill, and (d) ordering them to pay their pro-rata share of the outstanding special-master fees within ten days of the contempt order. We will address each of these arguments in turn.

a. *Appointment of the Special Master.* Plaintiffs first argue the trial court abused its discretion by appointing a special master when its decision to do so does not reflect any consideration of the factors required by Uniform Superior Court Rule 46.[10] We disagree.

A judge's exercise of discretion in "referring a matter to an auditor, and, by extension, a special master, will not be interfered with, absent abuse."[11] And to that end, Uniform Superior Court Rule 46 provides that when a trial court appoints a special master, it "should consider the fairness of imposing the likely expenses on the parties and should protect against unreasonable expense and delay, taking into account

---

[10] Although this is an action in state court, the Uniform Superior Court Rules also apply to state courts. See Unif. State Ct. Rules (Preamble) ("The Uniform Rules for the Superior Courts shall be applicable in State Courts … .").

[11] *Alston & Bird, LLP v. Mellon Ventures II, L.P.*, 307 Ga. App. 640, 647(6)(a) (706 SE2d 652) (2010). See *Nationstar Mortgage LLC v. Brunt*, 330 Ga. App. 202, 202(1) (766 SE2d 818) (2014) ("A trial court is authorized to refer a portion of litigation pending before it to a special master pursuant to Uniform Superior Court Rule (USCR) 46, and the exercise of the trial court's discretion to do so will not be interfered with by appellate courts absent an abuse of that discretion.").

the burdens and the benefits such an appointment would produce."[12] Rule 46 adds that "[t]he appointment of a special master shall not deprive any party of access to the courts or the civil justice system."[13] And as to the special master's compensation, Rule 46 explains that the court "shall fix the master's compensation on the basis and terms stated in the order of appointment, but the court may set a new basis and terms after notice and an opportunity to be heard."[14] Once fixed, the compensation *must* be paid by either "a party or parties" or "from a fund or subject matter of the action within the court's control."[15] Finally, Rule 46 requires the court to "allocate payment ... among the parties after considering the nature and amount of the controversy, the

---

[12] Unif. Sup. Ct. R. 46(A)(3) (emphasis added).

[13] Id.

[14] Unif. Sup. Ct. R. 46(H)(1).

[15] Unif. Sup. Ct. R. 46(H)(2)(a)-(b). See also OCGA § 9-7-22(a) ("The fees of an auditor to whom a case, whether legal or equitable, has been referred shall be determined and fixed by the trial judge making the referral or by any other judge having jurisdiction of the case and serving in the place and stead of the trial judge. The fees so determined and fixed may be apportioned between and among the parties at the discretion of the judge."); *Davis v. Harpagon Co., LLC*, 300 Ga. App. 644, 646(1) (686 SE2d 259) (2009) (explaining that "[t]he term 'auditor,' for purposes of the statute, is broad enough to include 'special master'"), overruled on other grounds by *Nix v. 230 Kirkwood Homes, LLC*, 300 Ga. 91 (793 SE2d 402) (2016).

means of the parties, and the extent to which any party is more responsible than other parties for the reference to a master."[16]

Here, plaintiffs maintain that—their concerns notwithstanding—the trial court disregarded these provisions before appointing the special master. But nothing in the record establishes that plaintiffs proffered *evidence* of an inability to pay *before* the court made its decision to appoint a special master.[17] Indeed, plaintiffs concede that "there was no evidence of [their] means [to pay the fees] before the trial court." Instead, plaintiffs' counsel said he would not "consent" to appointing a special master because his clients could not pay the special-master fees.[18] But once it became clear the court would appoint a special master, plaintiffs *agreed* with its suggested special master and proposed a fee structure. Then, *after* the special master was appointed and

---

[16] Unif. Sup. Ct. R. 46(H)(3).

[17] See OCGA § 9-15-2(a)(1) ("When any party, plaintiff or defendant, in any action or proceeding held in any court in this state is unable to pay any deposit, fee, or other cost which is normally required in the court, if the party shall subscribe an affidavit to the effect that because of his indigence he is unable to pay the costs, the party shall be relieved from paying the costs and his rights shall be the same as if he had paid the costs.").

[18] The only time plaintiffs entered any evidence of an alleged inability to pay into the record was *after* failing to make payment and when faced with a motion for contempt.

the compensation scheme was delineated, plaintiffs did not move for reconsideration or modification of the appointment due to an inability to pay[19] or because the court disregarded other Rule 46 factors[20] (such as "the extent to which any party is more

[19] See *Hunt v. Thomas*, 296 Ga. App. 505, 507(1) (675 SE2d 256) (2009) (holding appellant waived right to complain on appeal about lack of summary-judgment hearing when appellant "could have filed a motion for reconsideration, or at the very least, sent the court a letter objecting to the order on the ground that the court failed to hold the requested hearing" but instead "took no such action"); *Davis, LLC*, 300 Ga. App. at 646(1) (noting there was "no indication in the record that [party] filed or was granted an affidavit of indigence, which would allow her to waive payment of the special master's fees").

[20] See *Barngrover v. City of Columbus*, 292 Ga. 486, 490(2) (739 SE2d 377) (2013) (holding appellant failed to establish that trial court abused its discretion in appointing special master when "[a]ppellant voiced no objection to the special master's qualifications in the 51 months between the special master's appointment and the special master's report and recommendation"); *Mt. Patmos Baptist Church, Inc. v. Rucker*, 376 Ga. App. 612, 614(3) (920 SE2d 484) (2025) (holding that even if trial court violated Uniform Superior Court Rule 46, appellant failed to demonstrate that it "*objected to the order* appointing the special master" (emphasis added)); *Standard Bldg. Co., Inc. v. Schofield Interior Contractors, Inc.*, 315 Ga. App. 516, 520(3) (726 SE2d 760) (2012) (explaining that because defendants "have not demonstrated that they objected *to the order* appointing the special master," the Court could not consider their challenge to the appointment (emphasis added)). Cf. *Patel v. Patel*, 342 Ga. App. 81, 82 (802 SE2d 871) (2017) (noting that appellants "filed a timely motion to set aside the Appointment Order, strenuously objecting to the appointment of a special master and explicitly stating that they were unable and unwilling to pay for a special master's services" and that they "contemporaneously forwarded their motion directly to the special master, requesting that he not perform any work on the case and informing him that they 'were not in position to incur any additional cost' and 'would not be able to pay his invoice'" (brackets omitted)).

responsible than other parties for the reference to a master"). Moreover, the trial court's order reflects that the *pro-rata* allocation of the special master costs was "as agreed upon by the Parties," and plaintiffs do not appear to dispute this assertion.

Even so, plaintiffs argue they could not have agreed to the special master's appointment because the trial court issued its order after considering "the objections" and record. We disagree—particularly when the record contains an explicit objection by defendants to plaintiffs' pre-appointment cost-structure proposal. In light of the foregoing, we conclude plaintiffs acquiesced to the trial court's appointment of a special master and cannot now complain about it.[21]

b. *Affidavits of Indigency*. Next, plaintiffs contend the trial court erred when it rejected their affidavits of indigency without a hearing. We agree.

Under OCGA § 9-15-2, when a pauper's affidavit is filed, "[i]n the absence of a traverse affidavit contesting the truth of an affidavit of indigence, the [trial] court

---

[21] See, e.g., *Cockerham v. Cockerham*, 359 Ga. App. 891, 899(3) (860 SE2d 163) (2021) ("[A] litigant cannot submit to a ruling, acquiesce in it, and still complain of the same." (quotation marks omitted)); *Cheatham Fletcher Scott Architects, P.C. v. Hull 2000, LLLP*, 352 Ga. App. 691, 695(3) (835 SE2d 644) (2019) ("No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further." (quotation marks omitted)).

may inquire into the truth of the affidavit of indigence."[22] And after a hearing, the court "may order the costs to be paid if it finds that the deposit, fee, or other costs can be paid and, if the costs are not paid within the time permitted in such order, may deny the relief sought."[23] Here, plaintiffs claim the court erred because it did not hold such a hearing.

As explained above, *after* defendants filed motions for contempt and the trial court conducted a hearing on that motion and *ordered* plaintiffs to do so, only then did plaintiffs submit affidavits of indigency *in response to the motion for contempt*. In other words, plaintiffs failed to present evidence at the hearing on the contempt motion.[24] The court then reviewed *in camera* plaintiffs' engagement agreement with their counsel and invoices purporting to show fees paid to counsel. And after considering the record evidence, the court concluded that plaintiffs had not shown exhaustion of

---

[22] OCGA § 9-15-2(b).

[23] Id.

[24] Cf. *Roberts v. Roberts*, 238 Ga. 256, 256 (232 SE2d 534) (1977) (holding appellant failed to meet his burden of showing his claim that "failure to pay was due to inability" when he only appeared at the contempt hearing "through his counsel" and "called no witnesses, but relied on his verified answer to the citation").

14

all available assets and resources and thus held them in contempt for failing to pay their share of special-master fees.[25]

Defendants did not file a traverse to the affidavits, but the trial court inquired into their truth when it conducted an *in camera* review of other documents after holding a hearing at which plaintiffs' defense to the contempt charge was their alleged inability to pay. To be sure, the court had already conducted a hearing on the motion for contempt. Even so, our law is clear: After plaintiffs filed untraversed affidavits of indigency, the court was required to conduct a second hearing before it could order that costs be paid.[26] And because the court did not do so, we vacate its ruling holding

---

[25] See *Darroch v. Willis*, 286 Ga. 566, 569(2) (690 SE2d 410) (2010) (noting that the inability to pay is a defense to contempt "only where the contemnor demonstrates that he has exhausted all resources and assets available and is still unable to secure the funds necessary to enable compliance with the court's order" and that contemnor must show "clearly that he has in good faith exhausted all the resources at his command and has made a diligent and bona fide effort to comply with the order of the court, and that he cannot borrow sufficient funds to comply with the obligation"); *Mahaffey v. Mahaffey*, 238 Ga. 64, 65(2) (230 SE2d 872) (1976) ("The burden ... is on the one refusing to pay 'to show that he has in good faith exhausted all of the resources at his command and has made a diligent and bona fide effort to comply with the decree ... .'"); *J. Michael Vince, LLC v. SunTrust Bank*, 352 Ga. App. 791, 795(2)(b) (835 SE2d 809) (2019) ("The burden is on the contemnor to prove that it was financially unable to make the ordered payment.").

[26] See *Williams v. DeKalb County*, 355 Ga. App. 106, 108 (842 SE2d 570) (2020) (reversing and remanding for a hearing because "the plain language of OCGA § 9-15-2

plaintiffs in contempt and remand for reconsideration after conducting the required hearing. It would be premature, then, to address plaintiffs' two additional contentions of error with regard to the contempt ruling—*i.e.*, that the court erred in finding them in contempt when they were incapable of making payment, and in ordering them to pay their pro-rata share of the outstanding special-master fees within ten days of the contempt order.[27]

---

(b) requires a hearing before a court may order costs to be paid"); *Lee v. Batchelor*, 345 Ga. App. 559, 561 (814 SE2d 416) (2018) (explaining "there is nothing in the statute that allows a court inquiring on its own into the truth of a pauper's affidavit to order the payment of court costs without a hearing"); *Boyd v. JohnGalt Holdings, LLC*, 318 Ga. App. 866, 872(3) (736 SE2d 459) (2012) ("[W]ithout a traverse or a hearing, the [appellants'] affidavits stand unrebutted in the record, and the [appellants] should have been relieved from paying costs without any adverse impact on their rights to pursue a legal remedy. Although the trial court attempted to inquire into the validity of the affidavit, it failed to hold the required hearing.").

[27] While plaintiffs do not raise this issue on appeal, we have serious reservations about the trial court's ability to hold them in contempt for nonpayment of the special-master fees when we determined in *A&M Hospitalities, LLC v. Alimchandani*, 359 Ga. App. 271 (856 SE2d 704) (2021), that a court erred by requiring plaintiffs to pay outstanding special-master fees *before final judgment.* Id. at 276–77(2). See OCGA § 9-15-3 ("The several officers of court are prohibited from demanding the costs in any civil case or any part thereof until after judgment in the same, except as otherwise provided by law."); *Mendenhall v. Kingloff*, 215 Ga. 726, 728(2) (113 SE2d 449) (1960) (holding under the predecessor statute to OCGA § 9-15-3 that a court was not authorized to require a party to advance costs to the auditor and accountant before judgment). Indeed, given the foregoing, we question the court's ability to order *any* party to pay special-master fees before final judgment. But because no party has

*2. Defendants' Cross-Appeals - Case Numbers A26A0522, A26A0524, A26A0677.*

On cross-appeal, defendants' sole contention is that the trial court erred in making all parties jointly and severally liable for paying the special-master fees. And for their part, plaintiffs state they "have no position on that argument as long as [they] are not liable for the bills because of their inability to pay ... ." We agree with defendants and vacate this aspect of the court's order.

More precisely, defendants argue that because special-master fees are a cost of litigation, ordering joint and several liability contravenes the "American Rule," under which—in the absence of a statutory or contractual exception—parties are generally responsible for their own attorney fees and litigation expenses.[28] And in tandem with the motion for contempt, defendants asked the trial court to reconsider its

---

challenged the appointment order on this basis, we will not delve any further into the issue. See *A.D.A. v. Xytex Corp.*, Case No. A25A1544, 2026 WL 306451, at *5 (Ga. Ct. App. Feb. 5, 2026) ("This Court has no duty—or even right—to speculate or make arguments on Appellants' behalf; were we to do so, we would be abandoning our role as neutral adjudicators and becoming Appellants' advocate.").

[28] See *City Heights Condo. Ass'n, Inc. v. Bombara*, 337 Ga. App. 679, 682(1) n.3 (788 SE2d 563) (2016) ("Under our legal system, the American [R]ule by which each party is responsible for its own attorneys' fees and litigation expenses generally applies unless there is some statutory or contractual exception.").

appointment order on this basis.[29] But the court's order of contempt made no ruling on the motion for reconsideration, and defendants now challenge the appointment order itself.[30]

Once again, this question implicates the general rule that each party to an action is responsible for paying their own costs of litigation.[31] In this case, before any

[29] As explained in note 7, *supra*, the trial court may still amend its order on motion for reconsideration, even though the motion was filed more than a year after the court appointed the special master.

[30] As noted above, because plaintiffs filed a direct appeal to the trial court's order holding them in contempt, see OCGA § 5-6-34(a)(2) (permitting direct appeals from contempt orders), the parties are permitted to challenge the earlier order appointing the special master, see OCGA § 5-6-34 ("Where an appeal is taken under any provision of subsection (a), (b), or (c) of this Code section, all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to the appealability of the judgment, ruling, or order standing alone and without regard to whether the judgment, ruling, or order appealed from was final or was appealable by some other express provision of law contained in this Code section, or elsewhere.").

[31] See generally *Williams v. Binion*, 227 Ga. App. 893, 893(1) (490 SE2d 217) (1997) ("Under the American Rule generally applicable in our legal system parties are responsible for their own attorney fees and expenses of litigation …, but legislation has provided some exceptions to this rule. In this state, the major exceptions to the American Rule arise in cases when a party has asserted unwarranted claims, engaged in improper defensive tactics, acted in bad faith, been stubbornly litigious, or has caused unnecessary trouble and expense." (citation omitted)); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F2d 768, 770–71(II) (11th Cir. 1991) ("According to the now

determination of liability and final judgment, the trial court ordered that all parties are jointly and severally liable for the special-master fees. But OCGA § 9-7-22(c) provides that the fees for a special master "shall be assessed as court costs and shall be paid prior to the filing of any appeal from the judgment of the court."[32]

We have located no authority directly on point with the procedural posture of this case; and the parties provide none. Indeed, the plaintiffs claim they have no position on this argument as it applies to defendants. Nor did the trial court identify any authority for imposing joint and several liability on *all* parties at this juncture. But looking to both the general rule and the language of OCGA § 9-7-22(c), we conclude the court abused its discretion in imposing joint and several liability for the special-master costs *at this stage* of the proceedings when there has been no determination of

---

axiomatic American Rule, ... all parties are to bear their own costs in litigation.").

[32] See *Interfinancial Midtown, Inc. v. Choate Constr. Co.*, 343 Ga. App. 793, 806(3)(a) (806 SE2d 255) (2017) (physical precedent only) (explaining that "a special master or auditor appointed by the superior court in a case such as this should be considered a cost or expense of litigation").

liability on the merits and thus no award of damages.[33] As a result, we vacate this

portion of the court's appointment order.

---

[33] Cf. OCGA 9-15-1 ("In all civil cases in any of the courts of this state, except as otherwise provided, the party who dismisses, loses, or is cast in the action shall be liable for the costs thereof."); OCGA § 13-6-11 ("The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."); *Fed. Deposit Ins. Corp. v. Loudermilk*, 305 Ga. 558, 575(2) (826 SE2d 116) (2019) (explaining that "[w]hen fault is indivisible—including in instances of concerted action—damages are awarded under joint and several liability"). Cf. also *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F3d 761, 773(VII)(B) (5th Cir. 1996) ("We know of no case suggesting that joint and several liability is inappropriate is a case of disparate fault. The standard American rule is that a plaintiff may recover against any joint wrongdoer and that the wrongdoers then can file contribution actions against their co-wrongdoers and allocate fault among themselves."); *Nash v. Chandler*, 848 F2d 567, 573(IV) (5th Cir. 1988) (holding that the State of Texas, which was appearing as an intervenor under 28 U.S.C. § 2403(b), was "not subject to liability on the merits and consequently [could not] be held jointly and severally liable for attorney's fees").

For all these reasons, as to Case Numbers A26A0521 and A26A0523, we vacate the trial court's ruling as to contempt and remand for further proceedings consistent with this opinion, but affirm in all other respects. As to Case Numbers A26A0521, A26A0524, and A26A0677, we vacate the imposition of joint and several liability for the special-master fees.

*Judgment affirmed in part and vacated in part, and case remanded with direction as to Case Nos. A26A0521 & A26A0523. Judgment vacated as to Case Nos. A26A0522, A26A0524, & A26A0677. Mercier and Pipkin, JJ., concur.*